Matter of Zeltman v Infinigy Eng'g, PLLC (2022 NY Slip Op 07117)

Matter of Zeltman v Infinigy Eng'g, PLLC

2022 NY Slip Op 07117

Decided on December 15, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 15, 2022

534627
[*1]In the Matter of the Claim of Edward Zeltman, Appellant,
v
Infinigy Engineering, PLLC, et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date:November 15, 2022

Before:Aarons, J.P., Pritzker, Reynolds Fitzgerald, Ceresia and Fisher, JJ.

Schotter Millican, LLP, New York City (Geoffrey Schotter of counsel), for appellant.
Sullivan Keenan & Oliver, LLP, Albany (John M. Oliver of counsel), for Infinigy Engineering, PLLC and others, respondents.

Fisher, J.
Appeal from a decision of the Workers' Compensation Board, filed July 2, 2021, which ruled that claimant did not sustain causally-related injuries and denied his claim for workers' compensation benefits.
Claimant, a construction manager, filed a claim for workers' compensation benefits on March 22, 2019, alleging that he injured his neck and lower back on March 15, 2019 in the course of lifting and moving heavy equipment at the home of the chief executive officer (hereinafter the CEO) of his employer.[FN1] Claimant was medically examined on the day of the alleged incident, reporting low back pain that radiated due to a lifting incident that day. On March 29, 2019, claimant first reported to his treating physician that, in addition to his lifting-related back injury, he had also slipped and fallen at the home of the CEO and suffered a left shoulder injury; this injury had not been previously noted on the claim form. Claimant thereafter maintained that he had been involved in two separate incidents at different locations causing injuries on March 15, 2019.
Specifically, claimant testified that he injured his left shoulder when he slipped and fell on ice shortly after he and his coworkers arrived to pick up heavy equipment, while waiting for the moving truck to back up. He further claimed that the onset of shoulder pain was delayed by one or two weeks and that the fall was apparently not witnessed by anyone nor reported to his supervisors or coworkers. Claimant had no explanation for why the shoulder injury was not included on any C-3 form. The CEO testified that he was present but did not witness a fall, claimant did not report a fall or shoulder pain to him and he observed no signs that claimant had fallen.
Claimant further recounted that he continued to work after falling, assisting three coworkers in loading the heavy equipment — estimated to weigh between 600 and 800 pounds — into the truck, which was then delivered to another location, and, while assisting with loading another similar piece of heavy equipment onto the truck at that location, he sustained a second injury to his lower back and neck. Claimant's manager testified that claimant and his coworkers returned to work after the heavy equipment deliveries, claimant completed further work and did not complain about any injuries or appear to be injured.
Claimant acknowledged that, about a month prior to these alleged incidents, his employer had raised issues about problems with his work performance and that, the day before these alleged incidents, he was advised that he was being immediately reassigned to a position in North Carolina, which he opposed. The treatment records from the day of the incidents reflect that claimant attempted, unsuccessfully, to persuade the provider to write a note that he was unable to work for two months due to his alleged work-related injuries. Claimant reported to the work warehouse on March 18, 2019 and proceeded to work, indicating that he could not drive [*2]and did not want to relocate to North Carolina; he reported his back injury to his manager for the first time and provided a doctor's note regarding that injury but made no mention of a shoulder injury or a fall, and he was fired the next day for failing to relocate. Claimant further testified that, in February 2020, his back seized up while exiting a car, causing claimed consequential knee injuries.
Several treating orthopedists testified that there was a causal relationship between claimant's back, neck, shoulder and knee injuries, opinions that were later established to be based in part on incomplete or inaccurate medical histories given to them by claimant. An independent medical examiner concluded that claimant's injuries were causally related, but further noted that MRI reports reflected degenerative changes in his cervical and lumbar spine that pre-dated and are unrelated to the incidents. A Workers' Compensation Law Judge (hereinafter WCLJ) disallowed the claim, finding that claimant was "an unreliable narrator," citing numerous factors in finding that he was not credible, including his delay in reporting the alleged slip and fall and his provision of inconsistent medical histories to his medical providers, rendering their opinions on causation unreliable and not credible. On appeal, the Worker's Compensation Board agreed with the WCLJ's credibility findings and conclusion that claimant had failed to submit credible evidence that he sustained causally-related injuries. Claimant appeals.
We affirm. An injury is compensable only where it "aris[es] out of and in the course of employment" (Workers' Compensation Law § 2 [7]; see Workers' Compensation Law § 10 [1]; Matter of Brennan v New York State Dept. of Health, 159 AD3d 1250, 1251 [3d Dept 2018]). As the party seeking benefits, "[a] claimant bears the burden of establishing, by competent medical evidence, a causal relationship between an injury and his or her employment" (Matter of Kotok v Victoria's Secret, 181 AD3d 1146, 1147 [3d Dept 2020] [internal quotation marks and citation omitted]; see Matter of Richman v New York State Workers' Compensation Bd., 199 AD3d 1216, 1217 [3d Dept 2021]). "This factual determination is within the province of the Board and such decision will not be disturbed if supported by substantial evidence" (Matter of Banish v Warren County Sheriff's Off., 209 AD3d 1081, 1082 [3d Dept 2022] [internal quotation marks and citations omitted]).
Substantial evidence supports the Board's determination. Importantly, the Board "is the sole arbiter of witness credibility" (Matter of Mendrok v New York City Tr. Auth., 202 AD3d 1173, 1175 [3d Dept 2022] [internal quotation marks and citation omitted]; accord Matter of Molander v New York City Tr. Auth., 209 AD3d 1092, 1094 [3d Dept 2022]). The WCLJ and the Board cited numerous reasons for discrediting claimant's account of the accidents, all of which are fully supported by the record. To that end, claimant delayed over two [*3]weeks in reporting the alleged slip and fall, which was unwitnessed by his nearby coworkers and supervisors who observed no signs that he had fallen and to whom he did not complain; he also failed to include the fall in either C-3 claim, undermining the credibility of his account of this incident. Likewise supporting the decision to discredit claimant are the events leading up to the alleged incidents and his motive to fabricate them due to his strong opposition to being immediately relocated to North Carolina, as directed the previous day due to poor work performance. Moreover, the medical treatment records that day reflect that claimant attempted to be taken out of work rather than placed on work restrictions, he pleaded with management not to be relocated and he showed up at the warehouse the Monday after the alleged incidents, despite his job relocation, all rendering his account suspect. Although the CEO recalled that claimant had reported tweaking his back during the move of the heavy equipment at the second location, claimant continued to work without apparent difficulty at that location, stating that he was "fine," and continued working when he returned to the warehouse, without complaint. Contrary to claimant's argument, the Board rationally relied upon his suspect conduct in, among other things, secretly recording conversations with his superiors as evidence, further undermining the legitimacy of his claims.
Moreover, claimant did not disclose his prior neck and back injuries and treatment from a 2013 motor vehicle accident on his initial claim form or to his treatment providers, and advised the independent medical examiner that those problems had long-since fully resolved prior to these alleged incidents, while inconsistently testifying that he had to be careful lifting because he had a "bad back and neck." The Board rationally concluded that this undermined the medical opinions of a causal relationship, particularly given the evidence that claimant had pre-existing degenerative conditions in his neck and back and a 2013 neck and back injury, all of which could reasonably explain his present symptoms and conditions. Although the WCLJ and the Board could have drawn different inferences from the testimony and the documentary evidence, "the Board has broad authority to resolve factual issues based on credibility of witnesses and draw any reasonable inference from the evidence in the record" (Matter of McGee v Johnson Equip. Sales & Serv., 184 AD3d 935, 936 [3d Dept 2020] [internal quotation marks and citation omitted]; accord Matter of Sausto v Wildlife Conservation Socy., 208 AD3d 1565, 1567 [3d Dept 2022]). As the inferences drawn were reasonable and supported by substantial evidence, the Board's determination will not be disturbed. We have considered claimant's remaining contentions and find them to be academic or without merit.
Aarons, J.P., Pritzker, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the decision is affirmed[*4], with costs.

Footnotes

Footnote 1: Claimant filed a second, somewhat differing claim in August 2019, which he testified he did not recall submitting or have any knowledge how or why that claim was submitted on his behalf.